# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Marcos Pasaye, | Case No.: 2:17-cv-02574-JAD-VCF |
| Plaintiff | **Order Granting Plaintiff's Motion for a Preliminary Injunction and Denying All Other Motions as Moot** |
| v. | |
| James Dzurenda, et al., | [ECF Nos. 4, 5, 17, 20] |
| Defendants | |

Pro se plaintiff Marcos Pasaye is an inmate at High Desert State Prison (HDSP). Pasaye claims to follow a Native American faith, but because he is neither of Native American descent nor a tribal member, the Nevada Department of Corrections (NDOC) administrative regulations preclude him from participating in Native American ceremonies, including the sweat lodge or sacred pipe. So, he brings this civil-rights action against NDOC's director and several HDSP officials, claiming that their regulations violate his rights under the First Amendment Free Exercise Clause, the Religious Land Use and Institutionalized Persons Act (RLUIPA), and the Fourteenth Amendment Equal Protection Clause. Because I found at the screening stage that Pasaye stated colorable claims, I directed the Nevada Attorney General's Office to respond to his motions for a temporary restraining order and preliminary injunction.[1]

Pasaye has demonstrated that he can likely show that his beliefs are sincerely held and that the administrative regulations categorically ban him for practicing his faith without any countervailing government interest, so I grant him a narrowly tailored preliminary injunction. Defendants are enjoined from enforcing these regulations against Pasaye and must allow him to participate in the Native American ceremonies it allows for other Native American practitioners,

---
[1] ECF No. 6 at 8–9.

including the sweat lodge, prayer circle, drum circle, smudging, sacred pipe, and access to the Native American grounds.

## Background

A series of administrative regulations (AR) govern prisoners' ability to practice their faiths throughout the NDOC system.[2] AR 810.2 recognizes more than two-dozen "faith groups," including "Native American."[3] That regulation also summarizes the religious accommodations each group receives, such as recognized holy days, permissible personal religious property, and approved worship practices.[4] Native Americans, for instance, are allowed to participate in the "[s]weatlodge ceremony, [t]alking [c]ircle, [p]ipe [c]eremony, smudging," etc.[5] AR 810.3 establishes a "Religious Practice Manual," which fleshes out the requirements and parameters for religious accommodations.[6] Under the "Native American Worship" section, the manual limits eligibility for the sweat-lodge and pipe ceremony to inmates who:

   a. Show proof of being enrolled in a federal recognized tribe;

   b. Demonstrate credible association with tribal living via written documentation from a recognized tribe;

   c. Demonstrate credible association with tribal living via written documentation from a tribe recognized by the United States government as having existed prior to 1887 (Dawes Act enacted) but not necessarily registered with the federal government; [or]

---

[2] ECF No. 14 at 14 (AR 810).

[3] *Id*. at 21 (AR 810.2 – current edition, adopted 2017).

[4] *E.g.*, *id.* at 22.

[5] *Id*.

[6] *Id*. at 37–70 (AR 810.3: Religious Practice Manual).

2

> d. Successfully obtain written verification of Native American ethnicity from the Nevada Indian Commission ("NIC") . . . .[7]

In 2017, the manual was amended to allow other "Earth-based" faith groups, including practitioners of Asatru/Odinism, Celtic Paganism, and Wicca,[8] to construct and use sweat lodges.[9] But the manual still limits the use of tobacco for the pipe ceremony to practitioners of a Native American faith.[10]

Pasaye acknowledges he was not born a Native American[11] but alleges he practices a Native American faith.[12] He does not detail when and how he began his religious practices, but there is evidence that he was on a Native American "grounds access list" for using the sweat lodge at a different NDOC prison in 2007.[13] Pasaye claims he was on a similar grounds list for

---

[7] *Id*. at 47 (addressing eligibility for the sweat-lodge ceremony); *id*. at 48 ("Native Americans eligible to participate in Sweat Lodge Ceremonies are also eligible to participate in Pipe Ceremonies.").

[8] *Id*. at 21 (list of faith groups); *id.* at 41 (describing "Earth-based Grounds" as "[a]ny outdoor area designated by the Warden to be used for religious worship, but that remain under the control of the NDOC, by Native Americans, Pagan Faith Groups and solitary practitioners. Unless otherwise stated or necessary, Earth-based grounds are the area on Department prison grounds where approved sweat lodges may be placed subject to the rules and regulations for such lodges, as is more fully set forth in this Manual.").

[9] *Compare id*. at 42 (2017 manual) ("Sweat: A[n] . . . [E]arth-based religious ritual (similar to a sauna) that uses hot coals or other steam-producing items that have been approved by NDOC that will permit Native Americans and qualified Earth-based religious worshipers an opportunity to engage in sweat ceremonies."), *with* ECF No. 11-2 at 2, 23 (2014 manual) ("Only Native Americans are allowed a sweat lodge, and must be no larger than ten (10) feet in diameter.").

[10] ECF No. 14 at 58 ("Only Native Americans are allowed to possess and use tobacco/kinnikinick (t/k)."). *Compare id*. at 22 (setting out Native American worship practices), *with id*. at 23 (setting out Asatru/Odinism worship practices).

[11] *Id.* at 4.

[12] *See, e.g*., ECF No. 4 at 4.

[13] ECF No. 14 at 80–81 (grounds list); *id*. at 6 (explaining that the grounds list was for Lovelock Correctional Center).

3

HDSP until early 2017, when defendant Julio Calderin, the HDSP chaplain, removed him from the list and instructed him to provide proof of "Native American ethnicity" to continue using the sweat lodge.[14] Unable to satisfy this requirement, Pasaye sent kites and grievances to Calderin and the other HDSP/NDOC defendants asserting that, because he believes in a Native American faith, he should be allowed to practice its rituals.[15] Pasaye explains that "[t]he sacred sweat lodge is equal to the scared pipe as a corner stone of Native Indian traditions. It is a purification ceremony. We are reminded that we are children of Mother [E]arth."[16] He adds that "[t]he sweat lodge is for purification, strength, guidance[,] and for physical, mental, emotional[,] and spiritual healing."[17]

After unsuccessfully attempting to regain access to Native American practices, Pasaye sought to change his religious designation to Asatru in late March 2017.[18] Pasaye describes the request as a "concession" because the religion's "beliefs closely resemble those of the Native American," and as Asatru is an Earth-based religion, its practitioners have access to the same grounds for sweat-lodge use.[19] Pasaye alleges that Calderin denied his request, stating that he believed Pasaye was requesting the change only because it would allow him to use the sweat lodge at the same time as Native American practitioners.[20] But as discussed below, defendants assert that Calderin approved the Asatru request. In May 2017, Pasaye requested recognition as

---

[14] ECF No. 4 at 3.
[15] *Id*. at 3–4; *see, e.g.*, ECF No. 11-5 at 3 (inmate request form sent to Chaplin Calderon).
[16] ECF No. 4 at 4.
[17] *Id*. at 4–5.
[18] ECF No. 11-5 at 5 (faith-group-affiliation declaration form).
[19] ECF No. 1-1 at 5–6.
[20] *Id*.; ECF No. 14 at 41 (extending use of Earth-based grounds to solitary practitioners).

4

a solitary Earth-based practitioner to access the "Earth based grounds" to use the sweat lodge,[21] but it is undisputed that Calderin denied Pasaye's request.[22] Pasaye eventually filed suit against defendants, seeking to enjoin them from enforcing the requirement under AR 810.3 that inmates must demonstrate their Native American lineage or tribal affiliation (lineage requirement) in order to practice a Native American faith.[23]

## Discussion

"A preliminary injunction is an extraordinary remedy never awarded as of right." The legal standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. In *Winter v. Natural Resources Defense Council, Inc.*, the Supreme Court clarified that, under these standards, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[24] And "in any civil action with respect to prison conditions," the Prisoner Litigation Reform Act requires courts to ensure that any injunctive relief issued is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."[25] Because I find that Pasaye has shown a likelihood of success on his RLUIPA claim, I address the *Winter* factors only as to that claim.

---

[21] ECF No. 1-1 at 5–6; *see also* ECF No. 14 at 46.
[22] ECF No. 11-5 at 4 (faith-group-affiliation declaration form).
[23] ECF No. 1-1 at 10.
[24] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).
[25] 18 U.S.C. § 3626.

5

## I. Pasaye has shown that he will likely succeed on his RLUIPA claim.

Congress enacted RLUIPA "in order to provide greater protection for religious exercise than is available under the First Amendment."[26] Section 3 of the act applies to inmates in state or local custody,[27] forbidding those governments from "impos[ing] a substantial burden" on the "religious exercise" of inmates, "even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person . . . (1) is in furtherance of a compelling governmental interest; and . . . (2) is the least restrictive means of furthering that compelling governmental interest."[28] "RLUIPA protects any exercise of religion, whether or not compelled by, or central to, a system of religious belief, but, of course, a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation."[29]

Defendants challenge Pasaye's request for injunctive relief in three primary ways. First, they argue that the 2017 amendment to AR 810.3 moots his claims because the regulation now allows other Earth-based practitioners to use a sweat lodge. Second, they challenge whether Pasaye's beliefs are sincerely held. Finally, they contend that the lineage requirement is not a substantial burden on his religious exercise. I address each point in turn.

---

[26] *Holt v. Hobbs*, 135 S. Ct. 853, 859–60 (2015); *id*. at 860 ("Several provisions of RLUIPA underscore its expansive protection for religious liberty.").

[27] *Id*. at 860.

[28] 42 U.S.C. § 2000cc-1.

[29] *Holt*, 135 S. Ct. at 862 (internal quotation marks and citations omitted).

### A. Pasaye's claims are not moot because its not clear that HDSP recognized him as an Earth-based practitioner and, even if it did, such practitioners do not have access to all Native American practices.

Defendants argue that Pasaye's claims are moot because Chaplain Calderin approved him for Asatru practice and the post-2017 manual therefore allows him to use a sweat lodge.[30] In support, they provide the "faith group affiliation declaration form" that Pasaye submitted in late March 2017, in which he requested recognition as an Asatru practitioner and which shows Calderin marking the request as "approved" on the same form a week later.[31] Pasaye acknowledges that he submitted the form but contends that defendants have "fabricated" its approval.[32] He highlights several portions of the record in support.

For instance, Pasaye points to the subsequent faith-group form he submitted several weeks after his Asatru request, in which he sought recognition as an "Earth Based solitary practitioner" and which Chaplain Calderin undisputedly denied.[33] If Calderin had, as defendants represent, approved Pasaye for Asatru practice several weeks earlier, it would be odd for Pasaye to then apply for recognition as a solitary practitioner—given that both Earth-based faith affiliations appear entitled to the same religious accommodations.[34] Similarly, Pasaye listed his *current* "faith group affiliation" on the solitary-practitioner request as "Native American," which belies the notion that he had been approved as an Asatru practitioner several weeks earlier.[35] And although the form notifies inmate-applicants that they cannot change their faith affiliation

---

[30] ECF No. 11 at 4.
[31] ECF No. 11-5 at 5.
[32] ECF No. 14 at 2–3.
[33] ECF No. 11-5 at 4 (solitary-practitioner request).
[34] ECF No. 14 at 41 (defining Earth-based groups and grounds).
[35] ECF No. 11-5 at 4.

7

within 12 months of the last approved affiliation change, Calderin didn't cite the fact that Pasaye had purportedly changed his affiliation to Asatru several weeks earlier under the "reason for denial" field. Instead, Calderin wrote "INMATE IS REGISTERED AS CATHOLIC[.]"[36] The fact that Calderin didn't list Pasaye as an Asatru practitioner under this field also undermines defendants' assertion that Pasaye was approved for that practice in March 2017.

Pasaye also highlights that the "Religion History" print-out that defendants provide lists "Catholic" as his only faith affiliation as of the July 2018 date that the report was printed from NDOC's system.[37] AR 810.3, however, requires that, each time a faith-affiliation form is approved, "[a]ny such changes must be documented and updated in Nevada Offender Tracking Information System (NOTIS)"[38]—the same system from which Pasaye's religion history was printed.[39] So, it is peculiar that his purported approval for Asatru practice is not reflected in this report. Similarly, Pasaye points to two separate inmate-request forms he submitted in late-August 2018, asking a caseworker what his "faith declaration [was] currently listed as[.]"[40] Both responses stated, "American Indian," even though they were issued mere weeks after the NOTIS print-out listed "Catholic" as Pasaye's only faith affiliation.

Finally, Pasaye cites Calderin's response to the grievance he submitted after being denied recognition as a Native American practitioner. Although the response is dated April 28, 2017, Calderin, in denying the grievance, wrote: "Inmate is registered as a Catholic and claims to be Native American"—making no reference to the Asatru recognition he purportedly approved a

---

[36] *Id*.

[37] ECF No. 11-4 at 2 ("Run Date" listed in bottom-left corner).

[38] ECF No. 14 at 17 (Religious Practice Manual).

[39] *See* ECF No. 11-4 at 2 (referencing NOTIS-RPT in bottom-left corner).

[40] ECF No. 14 at 74, 79.

8

month earlier.[41] And in the same grievance response, Calderin also stated that Pasaye "has [at] other times given his name to be added to Pagan list," which is an apparent reference to Pasaye's Asatru recognition request.[42] But again, Calderin made no mention of approving Pasaye for such practice.[43] Although I am unwilling at this stage of the litigation to conclude that defendants backdated the approval of Pasaye's Asatru recognition request, I find that, at a minimum, the evidence Pasaye advances undermines the accuracy of HDSP's records about his faith affiliation. I will consider this fact below in evaluating defendants' argument that Pasaye's beliefs are not sincerely held.

But even if HDSP did recognize Pasaye as an Asatru practitioner, his challenges are not moot. While the post-2017 version of AR 810.3 extends Earth-based practitioners the ability to use a sweat lodge, this is not the only Native American ritual to which Pasaye subscribes. He asserts that the scared-pipe ceremony is equally significant,[44] but AR 810.3 limits this practice and the use of tobacco to recognized Native Americans.[45] Pasaye has also cited the religious

---

[41] *Id.* at 72.

[42] *Id.*

[43] Pasaye also cites to a case before a different judge in this district, in which an inmate successfully brought First Amendment free-exercise claims against Calderin. ECF No. 14 at 3 (citing *Howard v. Connett*, No. 2:11-cv-1402-RFB-GWF, 2017 WL 4682300, at *1 (D. Nev. Oct. 17, 2017)). In denying the defendants' motion for a new trial, the court found that Calderin, based on his trial testimony, had "recklessly yet unequivocally **lied** in an official grievance report" and "admitted on the stand to fabricating statements during the grievance process." *Connett*, 2017 WL 4682300 at *8 (emphasis in original). Because none of this information is part of the record in this case, I construe Pasaye's citation to the other decision as a request for judicial notice. But it is improper for me take judicial notice of these types of facts from another case. *See* Fed. R. Evid. 201(b) (limiting judicial notice to "a fact that is not subject to reasonable dispute").

[44] ECF No. 4 at 4.

[45] ECF No. 14 at 58.

9

importance of singing traditional Native Americans songs with the use of a drum,[46] which does not appear available to other Earth-based practitioners.[47] Nor have defendants cited any authority establishing that allowing a prisoner to practice a religion comparable to his sincerely held beliefs satisfies the free exercise of religion guaranteed under RLUIPA and the First Amendment. Accordingly, the purported availability of other Earth-based faiths does not redress Pasaye's claimed injury.

### B. Pasaye has shown that he could likely establish the sincerity of his beliefs.

Defendants also argue that Pasaye has consistently identified himself as Christian and that he therefore does not sincerely hold Native American beliefs.[48] The sincerity of a plaintiff's beliefs "is, of course, a question of fact,"[49] so I must, at this stage, determine Pasaye's likelihood of establishing this element. But I must also be mindful that, "[t]hough the sincerity inquiry is important, it must be handled with a light touch, or 'judicial shyness.'"[50] This inquiry is thus limited to "almost exclusively a credibility assessment" because "[t]o examine religious convictions any more deeply would stray into the realm of religious inquiry, an area into which [courts] are forbidden to tread."[51]

---

[46] *Id.* at 9–10 (discussing the Native American rituals that Pasaye practiced to mourn his uncle's passing).

[47] *Compare id*. at 22 (listing drum sticks as "allowable" Native American "Religious Property" and a "Talking Circle" as a permissible practice), *with id*. at 23 (not listing such items/practices for Asatru/Odinism).

[48] ECF No. 11 at 7–8.

[49] *United States v. Seeger*, 380 U.S. 163, 185 (1965); *see also Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 983 (8th Cir. 2004).

[50] *Moussazadeh v. Tex. Dep't of Criminal Justice*, 703 F.3d 781, 792 (5th Cir. 2012), *as corrected* (Feb. 20, 2013) (quoting *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 262 (5th Cir. 2010)).

[51] *Id*. (internal quotation marks and citation omitted).

Defendants primarily cite to Pasaye's religious history, which shows that he declared himself Catholic in 2011,[52] and a case note in his file reporting that he helped start a church group at the Lovelock Correctional Center around 2013, while he was incarcerated there.[53] Pasaye acknowledges that he "converted to a Christian based faith" while incarcerated "at Ely State Prison in 2010–2011" and then helped create the Lovelock group,[54] but he represents that he has since reverted back to his Native American beliefs.[55] Pasaye's past adherence to Christianity has limited probative value for assessing whether his *current* beliefs are sincerely held. Indeed, courts have rejected the argument that failing to strictly adhere to one's own faith[56] or even previously identifying with another religion[57] is determinative of current beliefs.

Although oscillating between declared faith affiliations would undermine a plaintiff's present sincerity, the record here merely establishes that Pasaye practiced Christianity several years ago and has since attempted to adhere to his Native American beliefs.[58] The fact that

---

[52] ECF No. 11-4 at 2.

[53] ECF No. 11-6 at 2.

[54] ECF No. 14 at 9.

[55] *Id.*

[56] *See Reed v. Faulkner*, 842 F.2d 960, 963 (7th Cir. 1988) ("But the fact that a person does not adhere steadfastly to every tenet of his faith does not mark him as insincere. . . . It would be bizarre for prisons to undertake in effect to promote strict orthodoxy, by forfeiting the religious rights of any inmate observed backsliding, thus placing guards and fellow inmates in the role of religious police.").

[57] *See Shaheed-Muhammad v. Dipaolo*, 393 F. Supp. 2d 80, 91 (D. Mass. 2005) (rejecting a challenge to the sincerity of a Muslim inmate's beliefs based in part on the fact that he listed his religion as Christian when he was first admitted to prison).

[58] I am also unpersuaded by Calderin's representation in his declaration that a Baptist pastor visits Pasaye at HDSP "on a monthly basis." ECF No. 11-7 at 3. Pasaye avers that this pastor is a friend who has only visited him twice. ECF No. 14 at 8. Calderin did not provide any detail about what this pastor and Pasaye discuss, but even if the pastor proselytizes to Pasaye, that doesn't show that he has rejected his Native American beliefs and returned to Christianity.

11

Pasaye attempted to identify as an Asatru and then solitary practitioner doesn't detract from this conclusion, as defendants have provided no evidence undermining his assertion that he did so only because these faiths are entitled under AR 810.3 to perform some rituals in line with the Native American ceremonies that defendants prevented him from practicing. And to the extent that defendants are arguing that NDOC's religious-history records don't reflect that Pasaye has ever identified as a Native American, these records have proven to be, at best, incomplete.[59]

On the other side of the credibility scale, Pasaye has written briefly but convincingly about his Native American beliefs, describing, for instance, the spiritually purifying effect of the sweat lodge.[60] Pasaye also describes that, in August 2018, he learned that his uncle was dying and therefore filed an emergency request with Chaplin Calderin "to be allowed to pray with [his] brothers for [his] uncle, smudge, [and] have access to a drum to be able to sing" traditional Native American songs.[61] Pasaye's uncle passed away before Calderin responded, but after mental-health staff contacted Calderin, he allowed Pasaye to perform these rituals to grieve the loss.[62] It is significant that Pasaye would seek comfort in these Native American beliefs during the passing of a loved one.

Accordingly, I find that Pasaye has shown that he could likely establish that his beliefs are sincerely held.

---

[59] *See Sample v. Lappin*, 424 F. Supp. 2d 187, 193 n.6 (D.D.C. 2006) ("The accuracy or inaccuracy of [Bureau of Prison] records does not necessarily reflect the sincerity of plaintiff's religious beliefs.").

[60] ECF No. 4 at 4–5.

[61] ECF No. 14 at 9–10; *id.* at 89.

[62] *Id.* at 10.

### C. By categorically preventing Pasaye from practicing his Native American faith, the lineage requirement substantially burdens his free exercise of religion with little to no countervailing government interest.

Defendants contend that AR 810.3's lineage requirement does not substantially burden Pasaye's free exercise of religion because it provides four ways in which he can establish that he is of Native American descent or a member of a Native American tribe.[63] This argument misses the forest for the trees. Because Pasaye acknowledges that he is not of Native American descent, he correctly concludes that he can never satisfy this requirement, which therefore operates as an absolute ban on his ability to practice his beliefs.

Whether guaranteed under RLUIPA or the First Amendment, the free exercise of religion forbids the government from deciding who may or may not ascribe to a set of religious beliefs.[64] Indeed, several courts addressing challenges to similar Native American lineage requirements have found them unconstitutional under both the First Amendment[65] and Equal Protection Clause.[66] As the district court for the Western District of Louisiana poignantly stated, such policies are "akin to a requirement that practicing Catholics prove an Italian ancestry, or that Muslims trace their roots to Mohammed. Under the Constitution, the freedom to believe, or not to believe, in a religious faith is reserved not to a select class of citizens, but to all."[67]

---

[63] ECF No. 11 at 6.

[64] *Cf. Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (rejecting a prison's policy of deferring to rabbis "on the question [of] whether an inmate is Jewish for purposes of the kosher diet program" because that question "turns on whether [a prisoner's beliefs] are 'sincerely held,' not on the 'ecclesiastical question' whether he is in fact a Jew under Judaic law").

[65] *Combs v. Corr. Corp. of Am.*, 977 F. Supp. 799, 802 (W.D. La. 1997).

[66] *Morrison v. Garraghty*, 239 F.3d 648, 659 (4th Cir. 2001) (citing *Combs* and concluding "that prison officials cannot measure the sincerity of [the prisoner-plaintiff's] religious belief in Native American Spirituality solely by his racial make-up or the lack of his tribal membership").

[67] *Combs*, 977 F. Supp. at 802; *see also Mauwee v. Donat*, No. 2:06-CR-00122-RCJ-VPC, 2009 WL 3062787, at *7 (D. Nev. Sept. 18, 2009) ("The right to free exercise of one's religion clearly

Additionally, another court within this district recently enjoined the same defendants from enforcing AR 810.3's lineage requirement against a different HDSP prisoner, who, like Pasaye, is not of Native American descent, finding that the requirement likely violated RLUIPA.[68] It is therefore clear that the lineage requirement is more than a substantial burden on Pasaye's ability to practice his Native American beliefs.

Defendants must therefore demonstrate that the requirement furthers "a compelling governmental interest" by using the "least restrictive means." Their rationales fall short. Defendants argue that they have a "compelling interest in preventing potential violence between Native American inmates and non-Native American inmates."[69] In support, they cite to a declaration from the chairman of the "NDOC Religious Review Team," who avers (without detail) that "there have been incidents at various institutions where Native American inmates have destroyed their lands or their sweat lodge because they believed it had been desecrated by the presence of non-Native American inmates or NDOC staff on their land."[70] Such a vague assertion cannot establish a compelling interest, especially considering that the declarant spoke about Native Americans taking offense—not attacking their fellow inmates or NDOC staff. And even if the possibility of other Native American worshipers being offended was a valid

---

includes the right to *choose* one's faith unrestricted by one's bloodline." (emphasis in original)), *aff'd*, 407 F. App'x 105 (9th Cir. 2010).

[68] *Guardado v. Nevada*, No. 2:18-CV-00198-GMN-VCF, 2018 WL 5019377, at *2 (D. Nev. Oct. 16, 2018), *reconsideration denied*, 2018 WL 6435328 (D. Nev. Dec. 6, 2018), and *appeal dismissed sub nom. Guardado v. Dzurenda*, No. 18-17220, 2019 WL 647029 (9th Cir. Jan. 16, 2019).

[69] ECF No. 11 at 9.

[70] ECF No. 11-8 at 3.

14

consideration,[71] Pasaye has undercut defendant's factual premise by providing a letter of support from several inmates of Native American descent.[72]

I am also unpersuaded by defendants' argument that, if Pasaye is given access to Native American rituals, a flood of other inmates will declare themselves believers of a Native American faith to enjoy associated benefits, like the use of tobacco in the pipe ceremony.[73] This is rank speculation—not evidence of a compelling interest. As Pasaye points out, it is well known that adherents of Judaism and Islam receive better food in prison due to their religious dietary restrictions, but neither he nor the flood of other inmates that defendants predict have attempted to change their faith affiliations simply to obtain this benefit.[74] And defendants' assertion that Pasaye "can practice Native American religion in his cell"[75] is anathema to the freedom of religion.

Because defendants have failed at this stage to justify the substantial burden they have placed on Pasaye's exercise of his religion, I find that he is likely to succeed on the merits of his RLUIPA claim.

---

[71] *Mauwee*, 2009 WL 3062787, at *7 ("RLUIPA cannot constitutionally abrogate the right to choose one's faith in the name of broadening the rights of another, because one has no free exercise right to exclude another person from practicing the religion of that person's choice simply because it offends him. So the claim that allowing unwelcome persons to practice their religion on the same ground as Plaintiff—the 'desecration' claim—is legally unmeritorious.").

[72] ECF No. 14 at 83–87 (providing a letter of support from four inmates who "are on the current grounds approval list, are Native Americans, and have documentation and/or roll numbers").

[73] ECF No. 11 at 6, 9.

[74] ECF No. 14 at 7.

[75] ECF No. 11 at 8.

**II. Because the lineage requirement deprives Pasaye of his freedom of religion, he has established irreparable harm.**

"When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable injury is necessary."[76] Citing this premise, the Ninth Circuit has held that "a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim."[77] Because RLUIPA expands on the First Amendment's protection of religious beliefs, this same reasoning applies to Pasaye's statutory claim, and he has therefore established the likelihood of irreparable harm.

**III. The balance of equities tilts in Pasaye's favor.**

Defendants' equities arguments merely recycle their position on why they have a compelling interest in requiring potential practitioners of a Native American faith to demonstrate their lineage.[78] These arguments fare no better in the context of this *Winter* factor. Pasaye has demonstrated that he can likely establish that his Native American beliefs are sincerely held and that AR 810.3 serves as a categorical ban on his ability to practice those beliefs. Equity therefore tilts strongly in Pasaye's favor.

---

[76] 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (3d ed.) (footnotes omitted).

[77] *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005).

[78] ECF No. 11 at 12.

**IV.     Enjoining defendants from enforcing the lineage requirement against Pasaye advances the public interest.**

"Congress enacted RLUIPA and its sister statute, the Religious Freedom Restoration Act of 1993 (RFRA), in order to provide very broad protection for religious liberty."[79] And by adding Section 3 of RLUIPA, Congress consciously extended that protection to prisoners. Enjoining defendants from enforcing a prison regulation that curtails that protection therefore advances the public interest.

**V.     Scope of the preliminary injunction**

Because Pasaye has satisfied all four *Winter* factors, I grant his motion for a preliminary injunction. But although Pasaye seeks to enjoin defendants from enforcing AR 810.3's lineage requirement against him "and all those similar[ly] situated,"[80] I issue the injunction at this stage only as to him because, among other things, this analysis is heavily dependent on an evaluation of Pasaye's own history and the sincerity of his personal beliefs. Accordingly, defendants are enjoined from requiring Pasaye, in order to practice his Native American beliefs, to:

a. Show proof of being enrolled in a federal recognized tribe;

b. Demonstrate credible association with tribal living via written documentation from a recognized tribe;

c. Demonstrate credible association with tribal living via written documentation from a tribe recognized by the United States government as having existed prior to 1887 (Dawes Act enacted) but not necessarily registered with the federal government; [or]

d. Successfully obtain written verification of Native American ethnicity from the Nevada Indian Commission ("NIC") . . . .

---

[79] *Holt*, 135 S. Ct. at 859.

[80] ECF No. 5 at 1.

17

Defendants must allow Pasaye to participate in the Native American ceremonies it allows for other Native American practitioners, including the sweat lodge, prayer circle, drum circle, smudging, sacred pipe, and access to the Native American grounds.

## Conclusion

IT IS THEREFORE ORDERED that:

- Plaintiff's **motion for a preliminary injunction [ECF No. 5] is GRANTED**. **Defendants are enjoined from enforcing AR 810.3's lineage requirement against the plaintiff** and must allow him to participate in the Native American ceremonies it allows for other Native American practitioners, including the sweat lodge, prayer circle, drum circle, smudging, sacred pipe, and access to the Native American grounds.

- Plaintiff's motion for a temporary restraining order and motions for a decision **[ECF Nos. 4, 17, 20] are DENIED as MOOT.**

Dated: March 22, 2019

_____
U.S. District Judge Jennifer A. Dorsey