UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Marcos Pasaye, | Case No.: 2:17-cv-02574-JAD-VCF |
| Plaintiff | **Order (1) Granting Defendants' Motion to Dismiss, (2) Granting Plaintiff's Motion for Excusable Neglect, and (3) Denying Plaintiff's Motions to Amend and to Reconsider** |
| v. | |
| State of Nevada ex rel., | |
| Defendants | [ECF Nos. 50, 58, 59, 62] |

    A week after I enjoined the defendant state and prison officials from enforcing a race-based policy that precluded plaintiff-inmate Marcos Pasaye from participating in Native American spiritual practices at the High Desert State Prison (HDSP),[1] Pasaye was paroled. I found that his release mooted his need for injunctive relief, so I dissolved the preliminary injunction, leaving his claims for monetary damages and declaratory relief.[2] The defendants now move to dismiss Pasaye's federal and state-law claims, arguing that he can't recover money damages from the defendants in their official capacities under 42 U.S.C. § 1983, and that they are entitled to qualified and discretionary immunity in their individual capacities.[3] Pasaye asks me to consider his late-filed opposition to the dismissal motion, and I do.[4] But I decline his request to reconsider my screening of his initial complaint where I dismissed the State of Nevada and the Nevada Department of Corrections (NDOC) as improper parties for his §1983 claims[5]

---

[1] ECF No. 25 (preliminary injunction).
[2] ECF No. 46 (dissolving the preliminary injunction)
[3] ECF No. 50 (motion to dismiss).
[4] ECF No. 62 (motion for excusable neglect).
[5] ECF No. 59 (motion to reconsider).

because he's not given me a basis to do so.  Pasaye also asks me for leave to amend his complaint again,[6] but his claims fail as a matter of law, rendering any further amendment futile.

As for the defendants' motion to dismiss, I find that Pasaye's release from HDSP mooted his claim for declaratory relief.  His federal claims fail because (1) he is unable to recover money damages against the defendants in their official capacities under a § 1983 claim and (2) he can't overcome the defendants' qualified-immunity defense because it was not clearly established in this circuit that a policy like this one is unconstitutional.  Because Pasaye's federal claims fail as a matter of law, I dismiss them with prejudice, and I decline supplemental jurisdiction over his state-law claims.

## Background[7]

When I screened Pasaye's initial complaint, I found that he had stated colorable claims against defendants Dzurenda, Williams, Nash, and Calderin under 42 U.S.C. § 1983 for violations of his constitutional rights under the First Amendment's Free Exercise Clause and retaliation prohibition, the Religious Land Use and Institutionalized Persons Act[8] (RLUIPA), and the Fourteenth Amendment's Equal Protection Clause.[9]  I dismissed these claims against the State of Nevada and NDOC because they are not persons for purposes of § 1983 claims.[10]  I also granted Pasaye a narrowly tailored preliminary injunction that prohibited the remaining defendants from enforcing the administrative regulation that categorically banned him from

---

[6] ECF No. 58 (motion to amend).

[7] I restate the facts only as necessary for the disposition of this motion.  For a full recital of the alleged facts, see my order granting the preliminary injunction at ECF No. 25 or the screening order at ECF No. 6.

[8] 42 U.S.C. §§ 2000cc, *et seq*.

[9] ECF No. 6.

[10] *Id*.

participating in the Native American ceremonies because he is not of Native American descent.[11] When I later granted Pasaye leave to amend his complaint,[12] he added three negligence-based state-law claims, named six additional state officials as defendants, and added a request for declaratory relief.[13]

     Pasaye was paroled from HDSP one week after I entered the preliminary injunction.[14] Because his release mooted his request for injunctive relief, I dissolved the injunction and allowed this case to proceed only on the single remaining issue of his damages for the alleged two-year deprivation of his religious-practice rights.[15] That order was silent, however, on his new request for declaratory relief.[16]

     The defendants now move to dismiss Pasaye's federal and state-law claims for damages, arguing that Pasaye can't recover money damages from them either in their official capacity—because they're not "persons" under § 1983—or in their individual capacities—because they are entitled to qualified and discretionary immunity.[17] Pasaye agrees that his official-capacity claims should be dismissed, but he maintains that the individual defendants can't claim qualified or discretionary immunity because it was clearly established that HDSP's policy of precluding non-Native American descendants from participating in Native American ceremonies is unconstitutional, and this court already declared the policy invalid.[18] Pasaye also filed a cluster

---

[11] ECF No. 25.
[12] ECF Nos. 29, 33.
[13] ECF No. 34.
[14] ECF No. 46.
[15] Id.
[16] Compare id., with ECF No. 34.
[17] ECF No. 50.
[18] ECF No. 57

of motions in which he asks for leave to file a second amended complaint to defeat the technical issues the defendants highlighted in their dismissal motion,[19] a motion to excuse his tardy opposition to the dismissal motion,[20] and a motion asking me to reconsider my screening order dismissing the State of Nevada and NDOC as defendants for Pasaye's § 1983 claims.[21]

**Discussion**

**I.    Motion for Excusable Neglect [ECF No. 62]**

Pasaye asks me to excuse the lateness of his opposition to the defendants' motion to dismiss.[22] Pasaye claims that his filing arrived at the courthouse on October 7, 2019, but that the clerk did not file it until October 16, two days after his filing deadline.[23] Federal Rule of Civil Procedure 6(b) allows courts to extend deadlines for (1) good cause shown and (2) "on motion made after the time has expired if the party failed to act because of excusable neglect." Courts must consider (1) prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the causes for the delay, including whether those reasons were within the moving party's reasonable control; and (4) the moving party's good faith.[24]

Each of these factors weighs in Pasaye's favor: Pasaye attached the tracking confirmation as proof that he mailed the document on time and that it arrived on October 7.[25] The defendants

---

[19] ECF No. 58.
[20] ECF No. 62.
[21] ECF No. 59.
[22] ECF No. 62.
[23] *Id.* at 2–3.
[24] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380. 395 (1993); *Stiller v. Costco Wholesale Corp.*, 3:09–cv–2473–GPC–BGS, 2013 WL 5417178, at *2–3 (S.D. Cal. Sept. 26, 2013).
[25] ECF No. 62 at 5.

are not prejudiced by my consideration of the late-filed motion; they didn't oppose this motion or move to strike Pasaye's opposition. And the two-day delay is de minimis. So, I grant his motion and I consider his opposition to the defendants' motion to dismiss.

## II.     Motion for Reconsideration [ECF No. 59]

Pasaye also moves for reconsideration of my screening order in which I dismissed the State of Nevada and NDOC because they are not persons for purposes of a § 1983 claim.[26] Pasaye argues that he has named these entities in his proposed second-amended complaint, despite the earlier dismissal, to comply with the naming requirements under NRS 41.031[27]—a technical deficiency that the defendants pointed out in their dismissal motion.[28]

Motions for reconsideration are not expressly authorized in the Federal Rules of Civil Procedure, but district courts may grant them under Rule 59(e).[29] Reconsideration is only warranted when: (1) the movant presents newly discovered evidence, (2) the district court committed clear error or the initial ruling was manifestly unjust, or (3) there is an intervening change in controlling law.[30] "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled."[31]

I deny Pasaye's motion for reconsideration. Pasaye has not pointed to any evidence, legal error, or change of intervening law in his paragraph-long motion that affects my prior ruling. Further, because the naming requirement under NRS 41.031 only applies to state-law tort

---

[26] ECF No. 59; *see also* ECF No. 6 at 8.
[27] ECF No. 59 at 4.
[28] ECF No. 50 at 17.
[29] *See Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 179 F.3d 656, 665 (9th Cir. 1999).
[30] *Id.*
[31] *See Brown v. Kinross Gold, U.S.A.*, 378 F.Supp.2d 1280, 1288 (D. Nev. 2005).

5

actions against the State or political subdivision, it was irrelevant to my analysis in the screening order and is therefore not a basis for reconsideration.[32] His naming-requirement argument is a completely separate issue, and I address it in my consideration of whether to grant him leave to amend his complaint again.

### III. The defendants' motion to dismiss [ECF No. 50]

#### A. *Motion-to-dismiss standard*

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[33] Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[34] The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[35] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[36] A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[37]

---

[32] Nev. Rev. Stat. § 41.031(2) ("In any action against the State of Nevada, the action must be brought in the name of the State of Nevada on relation of the particular department, commission, board or other agency of the State whose actions are the basis for the suit."); *see also* Nev. Rev. Stat. § 41.0337(1) ("No tort action arising out of an act or omission within the scope of a person's public duties or employment may be brought . . . unless the State or appropriate political subdivision is named a party defendant under NRS 41.031.").

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[34] *Id.*

[35] *Id.* at 679.

[36] *Id.*

[37] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B.     Section 1983 standard

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."[38] To state a claim under § 1983, a plaintiff must allege that (1) a person acting under the color of state law (2) violated a right secured to the plaintiff by the Constitution or the laws of the United States.[39] "A defendant acts under color of law if he 'exercises power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[40]

### C.     All of Pasaye's claims for money damages against the defendants in their official capacities fail.

The defendants argue that Pasaye's § 1983 claims under the First Amendment, Fourteenth Amendment, and RLUIPA against the defendants in their official capacities fail as a matter of law because they are not "persons" for § 1983 liability purposes.[41] Pasaye concedes that his claim for money damages against the defendants in their official capacities should be dismissed.[42] But he argues that he can still recover money damages against the State and NDOC (assuming that I allow him to amend his complaint to add these parties) for his RLUIPA claim because the defendants waived their sovereign immunity when they accepted federal funds.[43]

---

[38] *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).
[39] *West v. Atkins*, 487 U.S. 42, 48–49 (1988).
[40] *Perez-Morciglio v. Las Vegas Metro. Police Dep't*, 820 F. Supp. 2d 1100, 1106 (D. Nev. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988) (alterations omitted)).
[41] ECF No. 50.
[42] ECF No. 57.
[43] *Id*.

"[N]either a State nor its officials acting in their official capacities are "persons" under § 1983."[44] Because "a suit against a state official in his or her official capacity . . . is a suit against the official's office[, ] . . . it is no different from a suit against the State itself"[45] and it is barred by the doctrine of sovereign immunity.[46] Because the defendants in their official capacities are not persons for § 1983 purposes, Pasaye's federal claims against them fail and I dismiss them from this lawsuit.

### D. Pasaye can't recover money damages from the State of Nevada or NDOC for his RLUIPA claim.

Pasaye claims that he can recover money damages from the State of Nevada and NDOC because the State waived its sovereign immunity for RLUIPA claims when it accepted federal funds, and he asks for leave to amend his complaint to add these defendants to support this claim.[47] Even if I were to grant Pasaye's request, this claim against them would also fail.

RLUIPA allows a plaintiff to "obtain appropriate relief against a government,"[48] which includes "a State, county, municipality, or other governmental entit[ies]"; its "branch, department, agency, instrumentality, or official[s]"; and "any other person acting under color of State law."[49] But the United States Supreme Court has interpreted "appropriate relief" to exclude claims requesting money damages against states based on sovereign immunity. The

---

[44] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

[45] *Id.* (internal citations omitted).

[46] *Id.* at 67 ("It is an 'established principle of jurisprudence' that the sovereign cannot be sued in its own courts without its consent.") (quoting *Beers v. Arkansas*, 61 U.S. 527, 529 (1858)).

[47] ECF No. 57.

[48] 42 U.S.C § 2000cc-2

[49] *Id.* at §2000cc-5(4).

Court explained in *Sossamon v. Texas*[50] that a state's acceptance of federal funds does not constitute a waiver of their sovereign immunity to suits for money damages in RLUIPA cases:[51] "RLUIPA's authorization of 'appropriate relief against a government,' § 2000cc–2(a), is not the unequivocal expression of state consent that our precedents require[, and] 'appropriate relief' does not so clearly and unambiguously waive sovereign immunity to private suits for damages that we can 'be certain that the State in fact consents' to such a suit."[52]  Because Pasaye may not pursue money damages against the State of Nevada and the NDOC, his proposed amendment would eventually fail, so I deny him leave to add these previously dismissed defendants.

### E. The individual defendants are entitled to qualified immunity on Pasaye's federal claims.

Qualified immunity protects government officials "from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct."[53]  I exercise my discretion to tackle the "clearly established" prong of the qualified immunity test first.[54]

"A court determining whether a right was clearly established looks to [United States] Supreme Court and Ninth Circuit law existing at the time of the alleged act.'"[55]  "A right is clearly established only if its contours are sufficiently clear that a reasonable official would

---

[50] *Sossamon v. Texas*, 563 U.S. 277 (2011).

[51] *Id*. at 285–86, 293.

[52] *Id*. at 285–86 (internal alterations omitted).

[53] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

[54] *Id*. ("We recently reaffirmed that lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first.") (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[55] *Quiroz v. Short*, 85 F. Supp. 3d 1092, 1107 (N.D. Cal. 2015) (quoting *Community House, Inc. v. Bieter*, 623 F.3d 945, 967 (9th Cir. 2010)).

understand that what he is doing violates that right."[56]  "[E]xisting precedent must have placed the statutory or constitutional question beyond debate."[57]  Courts must not "define clearly established law at a high level of generality."[58]  "The dispositive question is whether the violative nature of *particular* conduct is clearly established."[59]  "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."[60]

The individual defendants argue that they are entitled to qualified immunity on Pasaye's First Amendment, Fourteenth Amendment, and RLUIPA claims against them because it was not clearly established that a policy that prohibits an inmate from participating in Native American religious practices due to his lack of Native American heritage is unconstitutional.[61]  Pasaye responds that the law in other circuits and sister district courts, which he claims are close enough, makes clear that the challenged policy is unconstitutional.[62]

A quick review of the cases Pasaye relies on shows that he can't meet the "clearly established" standard to overcome the defendants' claim of qualified immunity.  In *Morrison v. Garraghty*,[63] the Fourth Circuit held that the district court had properly enjoined the defendant prison officials from precluding the inmate-plaintiff from participating in Native American spiritual practices "*solely* on the basis of his lack of membership in the Native American race"

---

[56] *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (internal quotation marks omitted).

[57] *Id.* (internal quotation marks omitted).

[58] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (alteration in the original) (quoting *Ashcroft*, 563 U.S. at 742).

[59] *Id.* (internal quotation marks omitted).

[60] *Id.*

[61] ECF No. 50.

[62] ECF No. 57 at 7.

[63] *Morrison v. Garraghty*, 239 F.3d 648 (4th Cir. 2001)

because such a race-based policy "runs afoul of the Equal Protection Clause of the Fourteenth Amendment."[64] In *Mitchell v. Angelone*, a Virginia court enjoined a prison from enforcing a policy that prevented an inmate from obtaining the Native American spiritual items because he was not of Native American descent, reasoning that the policy violated the inmate's equal-protection rights.[65] In *Brown ex rel. Indigenous Inmates at N.D. State Prison v. Schuetzle*, a North Dakota court held that prison officials "would be prohibited under the First Amendment from adopting a policy that prevented non-Native Americans from attending the sweat lodge ceremony."[66] Finally, Pasaye cites to *Mauwee v. Donat*, an unpublished case from this district that concerned the converse policy at issue here: whether a prison's policy of allowing non-Native American inmates to participate in Native American practices violated the Native Americans' free-exercise rights.[67] The court held the prison officials were entitled to qualified immunity because it was not clearly established that the Native American inmates could abrogate a non-Native American inmate's free-exercise rights under RLUIPA based on race.[68]

These cases are persuasive, but they fall short because they are not binding precedent. Pasaye points out that, in my preliminary-injunction order, I relied on these same authorities to hold that he likely could succeed on his RLUIPA claim.[69] But neither my previous order nor any

---

[64] *Id.* at 661–62 (emphasis in the original) (internal quotation marks omitted).

[65] *Mitchell v. Angelone*, 82 F. Supp. 2d 485, 493 (E.D. Va. 1999).

[66] *Brown ex rel. Indigenous Inmates at N.D. State Prison v. Schuetzle*, 368 F. Supp. 2d 1009, 1024 (D. N.D. 2005).

[67] *Mauwee v. Donat*, No. 3:06–cv–00122–RCJ–VPC, 2009 WL 3062787, at *7–8 (D. Nev. Sept. 18, 2009), *aff'd*, 407 F. App'x 105 (9th Cir. 2010).

[68] *Id.* at *8.

[69] ECF No. 57.

of these authorities amount to clearly established precedent or "what is necessary absent controlling authority: a robust 'consensus of cases of persuasive authority.'"[70]  So, I conclude that Pasaye has not met his burden in defending against the individual defendants' qualified-immunity defense so his claim for money damages against the individual defendants fails.

### F. Even if the defendants were not entitled to qualified immunity on Pasaye's equal-protection claim, the claim fails for lack of personal participation.

The defendants argue that Pasaye's equal-protection claim against them must be dismissed because he has not alleged that any of them, except Calderin, participated in treating Pasaye differently than other inmates.[71]  "Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law."[72]  "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."[73]  Even if the defendants were not entitled to qualified immunity on the Pasaye's equal-protection claim, I would dismiss this claim against them for lack of participation.

Pasaye launched this claim against defendants Calderin, Williams, Dzurenda, Nash, Thomas, Snyder, Sandoval, and Laxalt.[74]  But he alleged that only Calderin "singled [him] out . . . and treated him different[ly] from similarly situated prisoners" when Calderin approved another non-Native inmate's land-access request and denied his.[75]  Because Pasaye didn't allege

---

[70] *Ashcroft*, 563 U.S. at 742.
[71] ECF No. 50.
[72] *Hafer v. Melo*, 502 U.S. 21, 25 (1991).
[73] *Id.* (internal quotation marks omitted).
[74] ECF No. 34 at ¶ 33.
[75] *Id.* at ¶ 34.

any other facts about the other defendants that would make them liable for his equal-protection claim, they are alternatively entitled to dismissal on Pasaye's equal-protection claim.

### G. *Pasaye's prayer for declaratory relief under RLUIPA is moot.*

Pasaye argues that even his claims for money damages for RLUIPA violations fail, he is still entitled to declaratory relief.[76] "Even if a case is moot with respect to injunctive relief, a court may invoke jurisdiction over a claim for declaratory relief."[77] The mootness inquiry turns on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment*."[78] For example, there can be no live controversy necessitating a declaratory judgment where a prisoner who complained of being transferred from a medium-security prison to a maximum-security prison without a hearing is subsequently transferred back to the medium-security prison and scheduled to be paroled.[79] Such changes in circumstances following the challenged transfer and pending parole date preclude the mootness exceptions of "voluntary cessation" and "capable of repetition, yet avoiding review" from applying.[80] When a prisoner is released, a "declaratory judgment without the possibility of prospective effect would be superfluous."[81]

---

[76] ECF No. 57 at 12.

[77] *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008).

[78] *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975); *Feldman*, 518 F.3d at 642 ("The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted.").

[79] *Preiser*, 422 U.S. at 402–03.

[80] *Id*.

[81] *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1095 (9th Cir. 2004).

Pasaye was paroled one week after I entered the preliminary injunction order enjoining the defendants from keeping him from participating in Native American spiritual practices.[82] Now that he has been released, his claim for declaratory relief can't proceed because it seeks an impermissible advisory opinion. So his declaratory-judgment claim for alleged RLUIPA violations also must be dismissed.

### H.   I decline supplemental jurisdiction over Pasaye's state-law claims.

Pasaye also alleges state-law claims for negligence; gross negligence; negligent training, supervision, and controlling; negligent infliction of emotional distress; and intentional infliction of emotional distress.[83] The defendants argue that these claims fail because the defendants are entitled to discretionary immunity and Pasaye didn't comply with NRS 41.031's naming requirement that any action against the state must explicitly name the state and the corresponding state department.[84] Though Pasaye attempts to fix this technical issue with his proposed amended complaint,[85] that amendment would be futile. Because I have dismissed Pasaye's federal claims with prejudice, there is no federal jurisdictional anchor to support his state-law claims.[86] So I exercise my discretion to decline jurisdiction over Pasaye's state-law claims and dismiss them without prejudice to his ability to reurge them in state court.

---

[82] ECF No. 25.

[83] ECF No. 34 at 18.

[84] ECF No. 50.

[85] *See* ECF No. 58-1.

[86] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725–26 (1966) (providing that federal courts exercise their discretion to deny pendent jurisdiction over state law claims, especially where it dismisses the federal claims before trial).

## IV. Motion to Amend [ECF No. 58]

Pasaye moves to file a second-amended complaint to cure the "technical defects[,] such as failing to name a certain party or suing in the wrong capacity," that the defendants have outlined in their motion to dismiss.[87] The proposed amendments include: adding the State of Nevada and the NDOC as defendants to his RLUIPA claim;[88] adding the State of Nevada, NDOC, Office of the Attorney General, and Office of the Governor as defendants in his negligence-based claims to comply with the naming requirement under NRS 41.031 and 41.0337;[89] removing his request for injunctive relief and clarifying that he seeks declaratory relief for each of his claims;[90] clarifying that he seeks damages for his official-capacity and individual-capacity RLUIPA claims because the defendants waived their Eleventh Amendment immunity when they accepted federal funds,[91] and, alternatively, that even if he can't obtain money damages for his RLUIPA claim, he still has a viable claim for declaratory relief.[92]

The general rule is that district courts are required to freely grant leave to amend, but that general rule "does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal."[93] A pro se litigant need

---

[87] ECF No. 58 at 3; *see also* ECF No. 58-1.

[88] ECF No. 58-1 at 20.

[89] *Id*. at 22.

[90] *Id*. at 31

[91] ECF No. 58 at 5–6.

[92] *Id*. at 31.

[93] *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (internal citations omitted).
15

not be given leave to amend if "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."[94]

*Sossamon v. Texas* implies that a RLUIPA plaintiff may only obtain equitable relief from the government,[95] and district courts in this circuit, relying on *Sossamon*, likewise limit the relief plaintiffs may obtain to non-money damages—injunctive and declaratory relief—from defendants in their "official or governmental capacit[ies]."[96] But Pasaye's proposed amendment to add the State of Nevada and NDOC as parties to support his claim for declaratory relief under RLUIPA would be futile. As explained above, he has been paroled and this changed condition moots his request for declaratory relief.

It would also be futile to allow Pasaye to add clarifying language about his unsupported belief that he can recover money damages against any of the defendants because RLUIPA doesn't allow money damages from state officials or individual actors when the state has not waived their sovereign immunity. And because Pasaye hasn't met his burden to show that the individual defendants are entitled to qualified immunity, there is no surviving relief for his

---

[94] *Cato v. U.S.*, 70 F.3d 1103, 1106 (9th Cir. 1995).

[95] *Sossamon*, 563 U.S. at 288; *see also id.* at 296–302 (J. Sotomayor, dissenting).

[96] *See Anselmo v. Cty. of Shasta, Cal.*, 873 F. Supp. 2d 1247, 1260 (E.D. Cal. 2012) (recognizing that equitable claims under RLUIPA may survive even if the defendants were entitled to qualified immunity from damages); *Jackson v. Sullivan*, 692 F. App'x 437, 439 (9th Cir. 2017) (dismissing RLUIPA claims because the plaintiff was not entitled a remedy for money damages and his equitable claims were moot); *Gray v. Lewis*, No. 13-cv-04929-SI, 2015 WL 3957865, at *4 (N.D. Cal. June 29, 2015) ("Plaintiff may not recover damages for claims under RLUIPA against any defendant in either an official or individual capacity, and may only seek equitable relief against a defendant in his official capacity."); *Mauwee*, No. 3:06-cv-00122-RCJ-VPC, 2009 WL 3062787, at *5 ("Although the Ninth Circuit has not ruled on the issue, the weight of authority in the sister Circuits overwhelmingly favors the conclusion that RLUIPA operates as a waiver of sovereign immunity as to equitable relief only.").

RLUIPA claim, and I have dismissed it with prejudice. So I deny him leave to add these defendants.

I also deny Pasaye leave to amend his state-law claims. The defendants' discretionary-immunity arguments aside, Pasaye's proposed changes to comply with the naming requirement under NRS 41.031 and 41.0337 would also be futile. Because I dismissed all of his federal claims with prejudice, I must dismiss his state-law claims, too, but without prejudice to his ability to bring them in state court.

## Conclusion

**IT IS THEREFORE ORDERED** that the defendants' motion to dismiss **[ECF No. 50] is GRANTED.** The plaintiff's federal claims are dismissed with prejudice, and his state-law claims are dismissed without prejudice to his ability to file a new action alleging these state-law claims in state court.

**IT IS FURTHER ORDERED** the plaintiff's motion to amend **[ECF No. 58] is DENIED.**

**IT IS FURTHER ORDERED** the plaintiff's motion for reconsideration **[ECF No. 59] is DENIED.**

**IT IS FURTHER ORDERED** the plaintiff's motion for excusable neglect **[ECF No. 62] is GRANTED.**

And with good cause appearing and no reason to delay, the Clerk of Court is directed to **ENTER FINAL JUDGMENT** for the defendant and **CLOSE THIS CASE**.

Dated: May 1, 2020

_____
U.S. District Judge Jennifer A. Dorsey